IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WAYNE E. HILL,

        Petitioner,                    No. CIV S-08-1206 GGH P

    vs.

JAMES D. HARTLEY, et al.,

        Respondents.           ORDER

_____/

I. <u>Introduction</u>

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 conviction for two counts of second degree burglary (Cal. Penal Code § 459), two counts of forgery (Cal. Penal Code § 475(c)), and two counts of identity theft (Cal. Penal Code § 530.5(a)). The jury also found true allegations that petitioner had suffered four prior convictions within the meaning of Cal. Penal Code § 667.5(b) and one prior conviction within the meaning of Cal. Penal Code § 667(b)-(I). Petitioner is serving a sentence of 9 years and 4 months.

        This action is proceeding on the original petition filed June 2, 2008, which raises the following claims: 1) the trial court erred in admitting hearsay to prove prior felony convictions; 2) insufficient evidence of the prior conviction; 3) trial court erred in refusing to

1

allow defense to introduce hearsay to prove that petitioner had not personally inflicted great bodily injury in commission of his prior conviction.

In his October 3, 2008, reply to respondent's answer, petitioner raised two claims that were not raised in the original petition: ineffective assistance of counsel and error pursuant to Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000). On November 20, 2008, the court issued an order stating that it did not appear that these two claims were exhausted. The court ordered petitioner to inform the court whether he wished to proceed with the claims or abandon the claims. The court advised petitioner that if he chose to proceed with the unexhausted claims, he must file an amended petition containing all of his claims and a motion for abeyance pending exhaustion addressing the factors set forth in Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528 (2005).

On December 10, 2008, petitioner filed a letter with the court stating that he wanted to abandon his unexhausted claims. Accordingly, the court will consider only the exhausted claims raised in the petition.

After carefully considering the record, the court orders that the petition is granted in part and denied in part.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion

for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions.  While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional

3

principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The California Court of Appeal was the last state court to issue a reasoned opinion addressing the claims. See Respondent's Lodged Documents 1 and 3. Accordingly, the court considers whether the denial of the claims by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority.

III. Discussion

    A. Background

The California Court of Appeal denied petitioner's claims as follows:

> Defendant's prior conviction was for assault by means of force likely to cause great bodily injury. (Pen.Code, § 245, subd. (a)(1); further section references are to the Penal Code unless otherwise specified.) In order for the crime to have been a serious felony (strike) within the meaning of the three strikes law, defendant must have personally inflicted great bodily injury on the victim or used a deadly weapon. (§ 1192.7, subds.(c)(8), (c)(23); People v. Banuelos (2005) 130 Cal.App.4th 601, 605.)
>
> To prove the strike allegation, the People introduced the transcript of defendant's plea of guilty to violating section 245, subdivision (a)(1) in 1988. The transcript shows that as the factual basis for the plea, the prosecutor stated, and defense counsel in the 1988 proceeding agreed: "[O]n the date specified in the Information in the County of Sacramento, the defendant had an altercation with the victim in this case, one Cynthia D[.] During that altercation, Mr. Hill flipped the victim over his back causing her to break her leg." Defendant made no objection to this factual basis before pleading guilty to assault by means of force likely to cause great bodily injury.
>
> The transcript of defendant's plea in 1988 was allowed into evidence over the objection of his defense counsel in this case, which occurred in 2006. According to defense counsel, the factual basis stated for the plea in 1988 was inadmissible

hearsay and its introduction violated defendant's right to confront evidence against him. Overruling the objection, the trial court found that defendant's plea of guilty after recitation of the factual basis for the plea constituted an adoptive admission of that factual basis.

As he did in the trial court, defendant argues the factual basis stated for his plea in 1988 should have been excluded as inadmissible hearsay. We disagree.

Evidence Code section 1221 provides that "[e]vidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth."

Thus, in People v. Sohal (1997) 53 Cal.App.4th 911 (hereafter Sohal ), this court held that when a defendant enters a plea of guilty following a recitation of "the factual basis for the plea as stated by the prosecutor with which defense counsel agree[s]," the defendant makes "an adoptive admission of the truth of the facts underlying the plea...." ( Id. at p. 916.)

Defendant seeks to distinguish Sohal because in that case the appellant entered a plea of guilty to assault with a deadly weapon ( Sohal, supra, 53 Cal.App.4th at p. 916), whereas defendant pled guilty to assault by means of force likely to cause great bodily injury. In his view, the holding of Sohal is inapplicable because he admitted only that he flipped the victim over his back under circumstances that were likely to cause great bodily injury, not that he actually caused her to suffer great bodily injury. Not so.

The factual basis for his guilty plea to assault by means of force likely to cause great bodily injury was that defendant "flipped the victim over his back causing her to break her leg." (Italics added.) Defense counsel agreed that this was an accurate factual statement, and defendant heard the statement and entered his guilty plea without objecting to the factual basis stated for the plea. Therefore, as the trial court in this case properly found, defendant's plea of guilty was an adoptive admission that he not only assaulted the victim by means of force likely to cause great bodily injury, he personally inflicted great bodily injury on the victim by breaking her leg.

Accordingly, admissible evidence supports the finding that defendant's prior felony conviction constituted a serious felony within the meaning of the three strikes law.

II

In the trial court, defendant moved to dismiss the strike allegation, asserting that medical records from 1988 showed the victim's leg had been broken just before the assault which led to defendant's prior conviction. He argued that the records would prove the prior assault did not involve serious bodily injury and, thus, it was not a serious felony within the meaning of the three strikes law.

Because those medical records were not part of the record of defendant's conviction in 1988, the trial court ruled that it was precluded from reviewing the

5

records and, thus, sustained the People's objection to their introduction into evidence.

Defendant contends the trial court violated his right to due process of law by refusing to admit medical records which, he claims, would show that the victim's leg was broken before defendant's assault, thus proving he did not personally inflict great bodily injury in his prior conviction. He is mistaken.

In determining whether a prior conviction is a serious felony for purposes of the three strikes law, "the trier of fact may look to the entire record of the conviction" but " no further." ( People v. Guerrero (1988) 44 Cal.3d 343, 355, orig. italics (hereafter Guerrero ).) Accordingly, the trial court is bound by the record of the conviction and "may not relitigate the circumstances of the prior crime." ( People v. Williams (1990) 222 Cal.App.3d 911, 915.) This rule "bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial." ( Guerrero, supra, 44 Cal.3d at p. 355.)

Defendant invites us to limit this rule only to the efforts of a prosecutor to prove the nature of a prior conviction as a serious felony. It should not, defendant argues, be applied to his effort to defend against the allegation that his prior felony conviction constituted a strike. We decline the invitation.

An argument akin to defendant's was rejected by the Court of Appeal, First Appellate District, Division Four, in People v. Bartow (1996) 46 Cal.App.4th 1573, at pages 1579, 1581-1582, which noted: "By emphasizing that the trial court could go ' no further ' than the record [of conviction], Guerrero forecloses the calling of live witnesses-by either prosecution or defense. [ Guerrero ] did not limit this condition to the prosecution, although it did justify the reasonableness of the rule by stressing its consequent protections for the defendant. We see no rational basis for adopting a different rule for the defendant, especially where to do so here would actually result in less protection for the accused.'" ( Barstow, supra, at p. 1581, orig. italics.) The same can be said for documentary evidence that is not included in the record of conviction. The doctrine of finality of judgments precludes such collateral attacks on the nature of a prior conviction.

The passage in People v. Reed (1996) 13 Cal.4th 217 at page 228, fn. 6, quoted by appellant FN1 does not compel a different rule. Indeed, in People v. Kelii (1999) 21 Cal.4th 452, which was decided after People v. Reed, supra, the California Supreme Court reiterated that in deciding whether a prior conviction qualifies as a strike, the trier of fact may look to the entire record of conviction, but no further. (People v. Kelii, supra, at p. 456.) "Thus, no witnesses testify about the facts of the prior crimes. The trier of fact considers only court documents." ( Id. at pp. 456-457.)

> [FN1. The passage he quotes from People v. Reed, supra, 13 Cal.4th at p. 228, fn. 6, states: "The United States Supreme Court has held that 'under recidivist statutes where an habitual criminal issue is "a distinct issue" [citation] ... [d]ue process ... requires [the defendant] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his

6

          own.' ( Specht v. Patterson (1967) 386 U.S. 605, 610 [18 L.Ed.2d 326, 330, 87 S.Ct. 1209]....)" However, Specht v. Patterson, supra, involved a "new finding of fact" that "was not an ingredient of the offense charged." ( Specht v. Patterson, supra, 386 U.S. at p. 608 [18 L.Ed.2d at p. 329].) Such is not the situation here.]

          Under the compulsion of Guerrero, supra, 44 Cal.3d at p. 355 and People v. Kelii, supra, 21 Cal.4th at pp. 456-457, the trial court properly excluded defendant's proffered evidence of medical records of the victim of his felony in 1988.

Respondent's Lodged Document 1, pp. 2-7.

        B.  Admission of Hearsay

        The court first considers petitioner's claim that the trial court erred in admitting the transcript from petitioner's 1988 change of plea hearing on grounds that it constituted inadmissible hearsay. Petitioner is alleging a violation of state law only.

        A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton v. Cupp, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

        The Supreme Court has reiterated the standards of review for a federal habeas court. Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991). In Estelle v. McGuire, the Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had granted federal habeas relief. The Court held that the Ninth Circuit erred in concluding that the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68, 112 S. Ct. at 480. The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts

may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the Due Process or Equal Protection clauses of the Fourteenth Amendment).

The Supreme Court further noted that the standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." Id. at 68, 112 S. Ct. at 480.  The Court also stated that in order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. at 73, 112 S. Ct. at 482.  Habeas review does not lie in a claim that the state court erroneously allowed or excluded particular evidence according to state evidentiary rules.  Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

This court agrees with the reasoning of the California Court of Appeal that admission of the transcript was proper under state law.  Petitioner mistakes *any* out-of-court statement as inadmissible hearsay.  An adoptive admission, whether viewed as a hearsay exception, Cal. Ev. Code § 1221, or as simply not hearsay, Fed. R. Ev. 801(d)(2), is not inadmissible.  For that reason, the court finds no violation of fundamental fairness by the admission of the transcript.  Accordingly, the denial of this claim by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority.

### C. Exclusion of Medical Records

The court now turns to petitioner's claim that the trial court erred in refusing to consider the victim's medical records demonstrating that she broke her leg before the incident involving petitioner.  Petitioner's claim alleging insufficient evidence of the prior conviction is encompassed by this claim.  The court now sets forth the following additional background information.

\\\\\

In support of his Romero motion filed in state court, petitioner's counsel attached copies of the at-issue medical records.  According to the Emergency Room Report from Methodist Hospital, on January 10, 1988, the victim was seen at the emergency room complaining of pain in her left ankle.  CT at 82.  She stated that she tripped and fell over her husband's foot and heard a pop.  Id.

X-rays of the ankle were normal and she was diagnosed with a sprained ankle.  Id.  Another report from Methodist Hospital dated January 11, 1988, states that a hairline fracture of the fibula was seen on review.  Id. at 83.  The x-ray report from January 10, 1988, states,

> There is lateral melleolar soft tissue edema present.  On the internal oblique view, there is a faint cortical irregularity about the distal fibula.  This is not seen on any additional views.  It may be artifactual.  If symptoms persist, however, a follow-up is recommended.  The mortise appears intact.  The medial and posterior malleoli appear intact and normal.

Id. at 85.

Petitioner committed the 1988 strike on January 15, 1988.  See Respondent's Lodged Document 6, p. 33.  A second count of assault with force likely to cause great bodily injury alleged to have occurred on January 17, 1988, was dismissed.  CT at 75.  On January 20, 1988, the victim went to the Emergency Room again.  The report from this hospitalization states,

> HISTORY OF PRESENT SITUATION
>
> The patient was injured on 1/10/88, 9 days prior to this admission, when she twisted her left ankle while walking.  She was seen in the ER on that day and diagnosed as sprain to the left ankle.  She was placed in a short leg posterior plaster splint.  The patient removed the splint two days prior to this admission.  As she felt it too cumbersome.  She states the ankle started hurting more as she used it.  There is no new injury history.  Review of the x-rays reveal a hairline fracture of the fibula.  There is no other history.
>
> *****
>
> DIAGNOSIS
>
> Hairline fracture of the left fibula by history.

CT at 89.

\\\\\

"State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324, 126 S.Ct. 1727 (2006) (quotations and citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42, 116 S.Ct. 2013 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence). This latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. Holmes, 547 U.S. at 324, 126 S.Ct. at 1731. "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 325-26, 126 S.Ct. at 1732-1733; see also Egelhoff, 518 U.S. at 42, 116 S.Ct. at 2017 (holding that the exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."). The defendant, not the state, bears the burden to demonstrate that the principle violated by the evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental." Egelhoff, 518 U.S. at 47, 116 S.Ct. at 2019 (internal quotations and citations omitted).

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir.2004); Drayden v. White, 232 F.3d 704, 711 (9th Cir.2000). The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based. See Chia, 360 F.3d at 1006.

At the outset, the court finds that petitioner had a clearly established right to present documentary evidence, not limited to the record from the prior conviction, at his sentencing hearing. In making this finding, the court relies on Gill v. Ayers, 342 F.3d 911 (9th Cir. 2003), not discussed by respondent. In Gill, the Ninth Circuit found the petitioner's due process rights were violated when he was not allowed to testify at his sentencing hearing as to the validity of his prior conviction for violating Cal. Penal Code § 245(a)(1) (assault with a deadly weapon or by force likely to cause great bodily injury). Based on the facts in Gill, to qualify the prior conviction as a strike the prosecution had to prove that the petitioner had personally used a deadly weapon, a baseball bat. 342 F.3d at 915. To prove this fact, the prosecution offered, among other things, a probation report in which the petitioner admitted using the baseball bat. Id.

In Gill, the trial court denied the petitioner's request to testify to explain his reasons for making the statements and to assert that he did not personally use the baseball bat as a deadly weapon. Id. at 915-916. In making this ruling, the trial court recognized California Supreme Court decisions holding that in proving prior convictions, the prosecution was limited to the record of conviction. Id. at 916.

In finding that the denial of petitioner's claim by the California Court of Appeal, the last state court to issue a reasoned decision, violated clearly established Supreme Court authority, the Ninth Circuit discussed several Supreme Court cases:

> A long line of Supreme Court precedent compels this conclusion. Beginning with Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925), the Court held that, in a criminal contempt proceeding for an act that occurred outside open court, a court must afford "the opportunity of the accused to present his defense by witnesses and argument." Id. at 536, 45 S.Ct. 390. Later, in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), citing to Cooke, the Court held that denial of the right to be heard by counsel was a "denial of a hearing, and, therefore, of due process in the constitutional sense." Powell, 287 U.S. at 69, 53 S.Ct. 55.
>
> The Court subsequently applied these elements of due process to defendants in recidivist proceedings. In Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), the Court, relying in part on Powell, held that it was a denial of due process

guaranteed by the Fourteenth Amendment to deny a defendant an opportunity to obtain counsel to defend against a recidivist charge. Id. at 10, 75 S.Ct. 1. See also Chewning v. Cunningham, 368 U.S. 443, 447, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962) (holding that, because "a trial on a charge of being a habitual criminal is such a serious one ( Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4), the issues presented under Virginia's statute so complex, and the potential prejudice resulting from the absence of counsel so great," counsel must be supplied to a defendant charged with habitual criminality). In Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), the Court, citing Chewning, Chandler and Reynolds v. Cochran, 365 U.S. 525, 81 S.Ct. 723, 5 L.Ed.2d 754 (1961), stated that "[a]lthough these cases were specifically concerned with the right to assistance of counsel, it would have been an idle accomplishment to say that due process requires counsel but not the right to reasonable notice and[an] opportunity to be heard." Id. at 452, 82 S.Ct. 501. The Court held that implicit in its earlier decisions was a requirement that a defendant "receive reasonable notice and an opportunity to be heard relative to [a] recidivist charge...." Id. There can be no doubt that Supreme Court precedent has clearly established that due process, including the right to be heard, applies to recidivist proceedings.

In 1967, the Supreme Court applied these due process guarantees in the context of a sentencing proceeding in which the petitioner received a sentence beyond the statutory maximum for the crime he committed. Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). In Specht, instead of being sentenced for the "indecent liberties" of which he was convicted, Specht was sentenced under Colorado's Sex Offenders Act, which authorized a sentence of one day to life "if the trial court 'is of the opinion that any ... person [convicted of specified sex offenses], if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill.' " Id. at 607, 87 S.Ct. 1209 (quoting Colo.Rev.Stat. Ann. § 39-19-1 (1963)) (alterations in Specht ). The Court compared sentencing hearings under Colorado's Sex Offenders Act to sentencing hearings "under recidivist statutes" which present "a distinct issue," and held that in a sentencing hearing under Colorado's Sex Offenders Act, a defendant is entitled to the full panoply of due process guarantees of the Fourteenth Amendment including the right to be present with counsel, to have the opportunity to be heard, to confront and cross-examine adverse witnesses, and to offer evidence of his own. Id. at 610, 87 S.Ct. 1209.FN6

> FN6. It is noteworthy that the California Supreme Court in People v. Reed (in which that court declined to address whether the defendant had a right to call witnesses to dispute the circumstances of a prior conviction), cited to Specht in dismissing the prosecution's contention that a defendant has no constitutional right to confront witnesses in a sentence enhancement proceeding: "The United States Supreme Court has held that 'under recidivist statutes where an habitual criminal issue is "a distinct issue" [citation] ... [d]ue process ... requires [the defendant] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own.' " Reed, 13 Cal.4th at 228 n. 6, 52 Cal.Rptr.2d 106, 914 P.2d 184 (quoting Specht, 386 U.S. at 610, 87 S.Ct. 1209) (alterations in Reed ).

\\\\\

    California's Three Strikes Law, like Colorado's Sex Offenders Act, authorizes sentences beyond the statutory maximum for the current offense, upon proof of additional facts. In the California scheme, the prosecution must prove either the fact of a prior conviction, or, as here, facts pertaining to that prior conviction. The State contends that Specht is distinguishable because Specht's sentence was based on facts other than a prior conviction, whereas Gill's sentence is based on his 1976 conviction. That argument fails. While it is true that Gill's Three Strikes sentence is based on his 1976 conviction, that conviction will not support his sentence without proof of the additional fact of personal use of a deadly weapon. As in Specht, that determination presents a distinct issue.FN7

> FN7. Gill has no right to relitigate the fact of the 1976 assault conviction. See Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 402-04, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001). Gill, however, does not attack his 1976 conviction. The 1976 conviction for violation of California Penal Code section 245(a)(1) embraced the possibility that Gill used a deadly weapon, but did not require proof that he personally used such a weapon. The charge that Gill personally used a deadly weapon introduced a new factual issue at the Three Strikes hearing.

    The State argues that because Gill was given the opportunity to present documentary evidence, and denied only the opportunity to testify, he was afforded a sufficient opportunity to be heard and there was no Fourteenth Amendment violation.  This argument misses the mark.  The Supreme Court has held that the right to be heard includes the right to testify. Rock v. Arkansas, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).  In Rock, the Court invalidated on due process grounds Arkansas' complete prohibition against hypnotically refreshed testimony, asserting "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Id. The opportunity to testify, the Court wrote, is "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." Id. at 52.  It is a "right [that] reaches beyond the criminal trial: the procedural due process constitutionally required in some extrajudicial proceedings includes the right of the affected person to testify" at probation and parole revocation proceedings and even at hearings on the termination of welfare benefits. Id. at 51 n. 9, 107 S.Ct. 2704 (citing Gagnon v. Scarpelli, 411 U.S. 778, 782, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).

343 F.3d at 918-919.

    While the issue in the instant case does not involve petitioner's right to testify at his sentencing hearing, it involves his right to present documentary evidence.  Based on the Supreme Court cases cited by the Ninth Circuit in Gill, it is clearly established that petitioner has a constitutional right to present evidence at his sentencing hearing.  See e.g. Specht, supra.  While these cases did not directly state that the right to present evidence was not limited to the record

from the prior proceeding, this conclusion reasonably flows from the holdings, particularly in a case like petitioner's which involved a "new finding of fact" that "was not an ingredient of the offense charged," i.e. that petitioner caused great bodily injury.  If the petitioner was limited to presenting evidence from his prior proceeding in refuting this new finding, the right to present documentary evidence could be rendered meaningless.

Having found that petitioner had a right to present evidence not limited to the record from the prior proceeding at his sentencing hearing, the court must next consider whether exclusion of this evidence violated petitioner's right to due process based on application of the factors set forth above.

First, the probative value of the evidence was high.  The medical records demonstrated that the victim suffered a hairline fracture in her leg five days before the incident leading to petitioner's 1988 conviction.  The victim's medical records from two days after the incident revealed no new injury to the leg.  These records strongly suggest that petitioner did not cause the victim to break her leg on the date in question.  As to reliability, no claim is made that the records are not reliable.  The medical records were easily capable of evaluation by the trier of fact.  In addition, the medical records were not cumulative of other evidence.  They constituted a major part of the attempted defense.

The only state interest identified by the California Court of Appeal in the rule admitting only evidence from the record of the prior conviction is to "bar[] the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial."  In the context of a case where proof of the prior conviction involves a "new finding of fact" that "was not an ingredient of the offense charged, the petitioner's interest in presenting evidence not limited to the previous record that he did not commit the uncharged element overrides any interest he may have in avoiding double jeopardy or a violation of his speedy trial rights.  Accordingly, the court finds that the exclusion of the medical records violated petitioner's right to due process.

Having found a constitutional violation, the court considers whether the exclusion of the reports had a "substantial and injurious effect or influence in determining the [fact finder's] verdict." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993). As discussed above, the medical records demonstrated that the victim most likely suffered the broken leg several days before the date petitioner committed the assault which led to his conviction. Had the trial judge considered these records, it is very likely that he would not have found that petitioner caused the victim to suffer great bodily injury. Accordingly, the court finds that the trial court's error in failing to consider the records was not harmless.

In the answer, respondent argues that petitioner's claim is barred by Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 402-04, 121 S.Ct. 1567 (2001). In Gill, the Ninth Circuit found that the petitioner's claim challenging the trial court's refusal to allow him to testify at his sentencing hearing was not barred by Lackawanna:

> Gill, however, does not attack his 1976 conviction. The 1976 conviction for violation of California Penal Code section 245(a)(1) embraced the *possibility* that Gill used a deadly weapon, but did not require proof that he *personally* used a weapon. The charge that Gill personally used a deadly weapon introduced a new factual issue at the Three Strikes hearing.

342 F.3d at 919 n. 7.

For the reasons stated by the Ninth Circuit in Gill, petitioner's claim also is not barred by Lackawanna. Respondent misses the primary point. If petitioner had been previously convicted of assault *causing* great bodily injury, Lackawanna would have spelled the end of the matter. However, when the prosecution in the enhancement proceeding is attempting to prove a fact greater than that necessary in the predicate conviction, petitioner must be permitted to oppose it. The adopted admission does not itself preclude contrary evidence, just like a confession in the main trial does not preclude the defendant from introducing evidence to contest the confession.

In the answer, respondent cites Shepard v. U.S., 544 U.S. 13, 125 S.Ct. 1254 (2005) in support of the argument that no due process violation occurred. To put this argument in context, the following background information is required. Under the Armed Career Criminal Act

(ACCA) only burglary convictions involving burglary of a building or enclosed spaces, i.e. "generic burglary," may be used to enhance sentences.  544 U.S. 13, 16, 125 S.Ct. 1254.  In Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143 (1990), the Supreme Court held that a court sentencing under the ACCA could look to statutory elements, charging documents and jury instructions to determine whether an earlier conviction after trial was for "generic burglary."  In Shepard, the Supreme Court ruled against the government, holding that courts sentencing under the ACCA could not also look to police reports or complaint applications to determine whether a prior burglary conviction was "generic."

Shepard is distinguishable from the instant action because it does not involve the issue of a criminal defendant's constitutional right to present evidence.  For this reason, respondent's citation to Shepard is not persuasive.

For the reasons discussed above, the court finds that the denial of this claim by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority.  Accordingly, the petition should be granted as to this claim.

Accordingly, IT IS HEREBY ORDERED that petitioner's application for a writ of habeas corpus is granted as to the claim that the trial court violated his right to present evidence by excluding medical records at his sentencing hearing; the petition is denied in all other respects; within 60 days of the date of this order, petitioner shall either be released or receive a new sentencing hearing in accordance with this order.

The Clerk shall enter judgment in favor of petitioner.

DATED: 12/23/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

hill1206.157